ACCEPTED
03-17-00538-CR
21307725
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2017 5:04 PM
JEFFREY D. KYLE
CLERK

**No. 03-17-00538-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2017 5:04:28 PM
JEFFREY D. KYLE
Clerk

**IN THE TEXAS THIRD COURT OF APPEALS**
**AT AUSTIN, TEXAS**

━━━━━━━━━━━━━━━

**DUSTIN ALLEN LAMBERT,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

━━━━━━━━━━━━━━━

*From the 277th District Court of Williamson County, Texas*
*Cause 15-0989-K277*

━━━━━━━━━━━━━━━

**APPELLANT'S BRIEF**

━━━━━━━━━━━━━━━

**James Gerard McDermott, II**
**Texas Bar No. 24041438**
**215 W. University Ave.**
**Georgetown TX 78626**
**512.354.4674**
james@centraltexasdefense.com
*Attorney for Appellant*

**TRIAL COURT JUDGE**
Hon. Stacey Mathews
405 Martin Luther King
Georgetown TX 78626

**APPELLANT**
Dustin Allen Lambert

**APPELLANT'S ATTORNEY AT TRIAL**
Jason Trumpler
State Bar No. 24053913
The Law Offices of Jason Trumpler
902 E. 5th Street, Suite 108
Austin, Texas 78702

**APPELLANT'S ATTORNEY ON APPEAL**
James Gerard McDermott, II
State Bar No. 24041438
215 W. University Ave
Georgetown TX 78626

**APPELLEE**
The State of Texas

| **APPELLEE'S ATTORNEY AT TRIAL** | **APPELLEE'S ATTORNEY ON APPEAL** |
|---|---|
| Natalie McKinnon | Shawn Dick, *or his designee* |
| State Bar No. 24045130 | District Attorney for Williamson County |
| Assistant District Attorney | 405 Martin Luther King |
| 405 Martin Luther King | Georgetown TX 78626 |
| Georgetown TX 78626 | |

# TABLE OF CONTENTS

| | |
|---|---|
| LIST OF PARTIES | ii |
| TABLE OF CONTENTS | iii |
| TABLE OF AUTHORITIES | iv |
| STATEMENT OF THE CASE | 1 |
| ISSUES PRESENTED | 1 |
| SUMMARY OF THE ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 6 |
| ISSUE | 6 |
| PRAYER | 11 |
| CERTIFICATE OF COMPLIANCE | 12 |
| CERTIFICATE OF SERVICE | 12 |

# TABLE OF AUTHORITIES

**CASES**

| | |
|---|---|
| *Brumbalow v. State,* 933 S.W.2d 298 (Tex. App.— Waco 1996, pet. ref'd) | 8 |
| *Edwards* v. *State*, 21 S.W.3d 625 (Tex. App.—Waco 2000, no pet.) | 6 |
| *Garza* v. *State*, 841 S.W.2d 19 (Tex. App.—Dallas 1992, no pet.) | 6 |
| *Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996) | 8 |
| *Hernandez v. State*, 268 S.W.3d 176, 184  (Tex. App.—Corpus Christi, 2008, no pet.) | 7 |
| *Jackson v. State,* 680 S.W.2d 809 (Tex. Crim. App. 1984) | 8 |
| *Jaenicke v. State*, 109 S.W.3d 793 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) | 7 |
| *Montgomery* v. *State*, 99 S.W.3d 257 (Tex. App.—Fort Worth 2003, no pet.) | 6 |
| *Nunez v. State*, 565 S.W.2d 536 (Tex. Crim. App. 1978). | 8 |
| *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) | 7 |
| *United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007) | 7 |
| *United States v. Castro-Juarez*, 425 F.3d 430(7th Cir. 2005) | 7 |

**CODES AND RULES**

| | |
|---|---|
| TEX. R. APP. P. 33.1 (a)(1)(A) | 6 |
| TEX. CODE CRIM. PROC. art. 42A.202 | 6 |
| TEX. CODE CRIM. PROC. art. 42A.301 | 10 |
| TEX. CODE CRIM. PROC. art. 42A.302 | 10 |
| TEX. CODE CRIM. PROC. art. 42A.504 | 10 |
| TEX. R. EVID. 103 | 10 |

| TEX. PEN. CODE § 1.02 | 8 |
| TEX. PEN. CODE § 22.01(a)(1) | 1 |
| TEX. PEN. CODE § 22.01(b)(2)(A) | 1 |

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS:**

**COMES NOW** Appellant, Dustin Allen Lambert, and submits this brief on appeal from a revocation of probation and an executed sentence in the 277th District of Williamson County, Stacey Mathews presiding.

## STATEMENT OF THE CASE

Appellant was indicted for assault-family violence, enhanced with two prior family-violence convictions, a third-degree felony. CR 15. *See* TEX. PEN. CODE §§ 22.01(a)(1), (b)(2)(A). He pled guilty, and the trial court sentenced him to eight years' confinement, suspended for four years. CR 16-17; RR2: 5; RR3: 4-5. The State filed a motion to revoke, and after a hearing the trial court revoked Appellant's probation and sentenced him to seven years' incarceration. CR 93; RR9: 117. This appeal followed.

## ISSUES PRESENTED

### ISSUE

**Appellant's sentence of seven years' incarceration was not necessary to prevent likely recurrence of Appellant's criminal behavior, does not meet the objective of rehabilitation, and does not recognize differences in rehabilitative possibilities among individual defendants.**

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion by sentencing Appellant to seven years' incarceration because that punishment violates the objectives of the system of

prohibitions, penalties, and correctional measures in the Penal Code. This Court should vacate the sentence and remand the case for a new punishment hearing.

<h2 style="text-align:center">STATEMENT OF FACTS</h2>

Morgan Sneed was the victim in the underlying offense in this case. CR 15. All of her testimony concerned events that happened before Appellant was placed on community supervision. In 2015, she worked with Appellant at a Cheesecake Factory location. RR8: 9-10. When she broke up with her boyfriend, she moved in with Appellant. RR8: 10-11. She and Appellant then dated from February until April of 2015. RR8: 11. At some point, Appellant started exhibiting anger issues. RR8: 12. He would make comments about her roommate, he would insult her, and he would hit things when he was angry. RR8: 12-14. He hit her on several occasions, and she was scared of him. RR8: 16, 17, 19, 23-24.

Michael Vos was a felony court officer for the Williamson County Probation Department. RR9: 16. If a probationer has been accused of violating the terms of probation, Vos meets with them to discuss the case. RR9: 16. He reviews the records kept by the other probation officers and any other law enforcement reports that may have been filed on the probationer. RR9: 17.

Vos met with Appellant once, on January 3, 2017. RR9: 20. Appellant was cooperative and respectful. RR9: 20. Vos noted that probation records indicated that Appellant failed to report to probation on one occasion, in October 2016. RR9:

21. However, Appellant called the probation department about the missed appointment a week after the report date and asked if he could make up the missed appointment. The probation department instead just instructed him to make his scheduled November appointment. RR9: 30.

Probation notes also show that Appellant was arrested for a new offense on November 28, 2016. RR9: 22. The offense report for that new arrest recited that Appellant was working at that time at the Hotel Archer, which was an employment situation of which the probation department was unaware. RR9: 23. Changing employment without permission would be a violation of the terms of probation. RR9: 23. However, the record establishes, and the trial court found, that Appellant did not change employment but only took on a second job for the extra income.

The probation department had no record of payment of fees from Appellant for four months: March, July, August, and October of 2016. RR9: 23. As of December 7 of 2016, Appellant was behind on payments by $219. He made a payment on December 24 in the amount of $140 in an attempt to catch up on what he owed. RR9: 32.

Appellant attended Batterer's Intervention classes, and they helped him adjust his attitude. RR9: 27-28. He learned that he had too much to lose to get angry and act out, and he realized how much his temper had caused him problems over the years. RR9: 28. He successfully completed the program. RR9: 28.

Baylea Builta dated Appellant in 2016. RR9: 37, 40-41. She met him when she worked at a restaurant and he came to drink at the bar. RR9: 41. At first, the relationship was fun and adventurous. RR9: 42. Around October 2016, they became engaged. RR9: 43. They later had a child together. RR9: 44.

On November 27, 2016, Builta called the police to report that Appellant had hit her on her face during an argument, after she had hit him first. RR9: 45, 46-47, 51. It resulted in "a busted lip and a black eye." RR9: 47; SX5. She was four-months pregnant at the time. RR9: 68. The argument started because Builta wanted to have sex but Appellant was getting ready for work and didn't want to be late. RR9: 71. She got angry at being rejected and started hitting him on his face and chest. RR9: 71-72. He left for work. RR9: 73. She called the police over four hours later. RR9: 74.

Builta also has anger issues, and so she removed herself from the apartment and went to a restaurant where she worked to keep herself from doing something she would regret. RR9: 50. She had reported at the time that she was scared to go home because "I thought he was going to kill me and that if I couldn't get away that I was going to move." RR9: 51.

Builta had called her mother for advice but had told her mother an inaccurate version of the story for sympathy. RR9: 75, 92. She based her report on the version she had told her mother, in part because her mother and grandfather pay for many of her bills and she was afraid they might cut her off if they knew the truth. RR9:

4

75, 81. However, she corrected the story to Travis County Victim's Services, about hitting Appellant first, because she did not want him to get into trouble for something she started. RR9: 62.

He had hit her on the face two other times, and she had told police that he had attempted to strangle her once. RR9: 53. Builta also told police that Appellant was controlling and jealous. RR9: 55.

Since he had been in jail on the warrant for the motion to revoke, they spoke approximately ten times each day, costing Builta over a thousand dollars. RR9: 44-45. During one of those calls, Appellant quizzed Builta about what had happened in court with her on another occasion. RR9: 57; SX 6. They also discussed her moving to Midland if he was not able to come home. RR9: 59; SX 6. Appellant got angry when he heard of the possible move. RR9: 59.

**Issue**
**Appellant's sentence of seven years' incarceration was not neces-sary to prevent likely recurrence of Appellant's criminal behavior, does not meet the objective of rehabilitation, and does not recog-nize differences in rehabilitative possibilities among individual de-fendants.**

## Preservation

Appellant anticipates that the State will argue that this issue is not preserved for appellate review because Appellant did not object to the sentence at the time it was pronounced. A specific objection is not required, however, when the basis of the objection or the ground for an appeal is apparent from the context. *See* TEX. R. EVID. 103(a) (requiring objection "stating the specific ground of objection, *if the specific ground was not apparent from the context*"); TEX. R. APP. P. 33.1 (a)(1)(A) (requiring specific objection "unless the specific grounds were apparent from the context"). Many circumstances exist in which an objection is not required to pre-serve a ground for appellate review. *See, e.g.*, *Montgomery* v. *State*, 99 S.W.3d 257, 259–60 (Tex. App.—Fort Worth 2003, no pet.) (no objection necessary to court's failure to *sua sponte* withdraw defendant's guilty plea and enter not guilty plea when evidence reasonably raises issue as to innocence); *Edwards* v. *State*, 21 S.W. 3d 625, 626–27 (Tex. App.—Waco 2000, no pet.) (no objection necessary to deadly weapon finding when jury did not find that defendant used or exhibited deadly weapon); *Garza* v. *State*, 841 S.W.2d 19, 23 (Tex. App.—Dallas 1992, no pet.)  (no

objection necessary to amount of restitution). At least two Texas courts have specifically held that fundamental error in punishment, such as the failure to consider the full range of punishment, can be raised under certain circumstances for the first time on appeal. *See Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App. —Corpus Christi, 2008, no pet.); *Jaenicke v. State*, 109 S.W.3d 793, 795-96 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Further, a specific objection to the sentence would have served no useful purpose in this case. The trial court held a unitary hearing, deciding the merits of the motion to revoke and punishment simultaneously, issuing the punishment decision immediately.

Due to the evidence presented and the arguments advanced, a specific objection to the sentence was not required and would, in fact, have been redundant. *C.f. United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005) ("Since the district court will already have heard argument and allocution from the parties and weighed the relevant [statutory sentencing] factors before pronouncing sentence, we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way."); *United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir. 2007) (following *Castro–Juarez*); *United States v. Autery*, 555 F.3d 864, 870–71 (9th Cir. 2009) (same).

**Penal Code Goals**

One of the objectives of the system of prohibitions, penalties, and correctional measures in the Penal Code is the rehabilitation of persons convicted of violations of the code. TEX. PEN. CODE § 1.02(1)(B). It is the duty of the trial court to prescribe such punishment as may be necessary to prevent likely recurrence of criminal behavior and to prescribe penalties that are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitative possibilities among individual offenders. *Id*. §§ 1.02(1)(C), 1.02(3).

**A Trial Court's Discretion**

Appellate courts review a sentence imposed by a trial court for abuse of discretion. *Jackson v. State,* 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). When the standard of review is abuse of discretion, the record must contain some evidence to support the decision made by the trial court. *Brumbalow v. State,* 933 S.W.2d 298, 300 (Tex. App.— Waco 1996, pet. ref'd). A reviewing court generally should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Green v. State,* 934 S.W.2d 92, 101 (Tex. Crim. App. 1996). Additionally, as a general rule, a sentence within the proper range of punishment will not be disturbed on appeal. *See Jackson*, 680 S.W.2d at 814; *see also Nunez v. State*, 565 S.W.2d 536, 538 (Tex. Crim. App. 1978). Appellant concedes that his sentence was within the statutorily authorized range for his offense.

**Application of the Law to the Facts**

There is nothing in the record to suggest that Appellant is beyond redemption or that he could not be rehabilitated.

Appellant made all scheduled appointments except for one: October 2016. RR9: 21. However, Appellant called the probation department about the missed appointment a week after the report date and asked if he could make up the missed appointment. The probation department instead just instructed him to make his scheduled November appointment. RR9: 30. This mistake does not show that Appellant is beyond the help that probation can offer. Rather, it shows his eagerness to comply even when mistakes are made.

Appellant was four months behind on payments. RR9: 23. However, in December 2016 he made extra payments in the amount of $169, over half of the amount in arrears. RR9: 32. He had taken a second job to help catch up on the amounts he owed. RR9: 22-23. Again, this effort shows Appellant's desire to fully comply with the terms of probation, even in the face of financial adversity.

Appellant attended Batterer's Intervention classes, and they helped him adjust his attitude. RR9: 27-28. He not only attended passively, but he was able to articulate the insights they gave and the ways they helped him modify his behavior. He learned that he had too much to lose to get angry and act out, and he realized how much his temper had caused him problems over the years. RR9: 28. He successfully completed the program. RR9: 28. Appellant is someone for whom

9

probation was helping to become a fully integrated member of society. Mistakes and relapse into old behavior patterns may occur, but the demonstrated efforts to improve should be encouraged rather than using relapse to punish.

Relapse is the best way to characterize the new offense. It was similar to the underlying offense in many respects, but in this case Builta accepted a shared responsibility for the event and maintained a relationship with him while he was in custody. RR9: 40-60.

The trial court had a less severe and more appropriate options available to it —rather than full incarceration, the trial court could have indicated a consideration of shock probation, it could have added jail time as a condition of continuing probation, and it could have ordered intensive individual treatment to give more long-term support to the measured success that the intervention classes had begun. *See* TEX. CODE CRIM. PROC. arts. 42A.202, .301, .302, .504.

When rehabilitation is possible, as it is in this case, it is a disservice to the public for a court to ignore the present overcrowding of penal facilities in Texas and submit a defendant to a punitive term of confinement. This is particularly true in Appellant's case. The court has an adequate means to supervise him. It would also be irresponsible to ignore the fact that there is wide and inconsistent sentencing in Texas and that, ostensibly, there are numerous defendants currently on pro-

bation for the offense such as Appellant's, as well as other offenses with circumstances much worse than Appellant's offense.

A sentence of incarceration in the instant case does not meet the objective of rehabilitating Appellant or permit recognition of differences in rehabilitative possibilities among offenders. Incarcerating Appellant for seven years is merely punitive. It does not further to Penal Code's goal of rehabilitation to sentence Appellant to incarceration when the trial court has alternate means to rehabilitate him and when he made sincere efforts to take comply with and learn through the structures that probation had given him.

Under the circumstances of this case, Appellant urges this Court to find that the trial court abused its discretion in sentencing Appellant to seven years' incarceration in his case and remand this case for a new punishment hearing.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court vacate the sentence and remand his case for a new punishment hearing.

Appellant prays for any such further relief to which he may be entitled.

Respectfully submitted,

/s/ James Gerard McDermott, II

James Gerard McDermott, II
**Law Office of James G. McDermott, PLLC**
215 W. University Ave.

11

Georgetown TX 78626
512.354.4674
james@centraltexasdefense.com
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Texas Rule of Appellate Procedure 9.4. The computer-generated word count for this document is 2547 words, including headers and footnotes.

/s/ James Gerard McDermott, II
James Gerard McDermott

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by efile on December 14, 2017 to:

**APPELLEE'S ATTORNEY ON APPEAL**
Shawn Dick, *or his designee*
District Attorney for Williamson County
405 Martin Luther King
Georgetown TX 78626

/s/ James Gerard McDermott, II
James Gerard McDermott